1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7 | MCKENNA GENE MEEHAN,                        Case No.2:23-CV-774  JCM (BNW)

8 |                              Plaintiff(s),                 ORDER

9 |        v.

10 | STATE FARM MUTUAL AUTOMOBILE
    INSURANCE COMPANY,
11
12 |                              Defendant(s).

13
14
15
16

Presently before the court is plaintiff McKenna Meehan's motion for partial summary judgment.  (ECF No. 22).  Defendant State Farm Automobile Insurance Company filed a response (ECF No. 32), to which plaintiff replied.  (ECF No. 33).

17
18

Also before the court is defendant's motion for summary judgment.  (ECF No. 31). Plaintiff filed a response (ECF No. 34), to which defendant replied.  (ECF No. 35).

19
20
21
22

Also before the court is plaintiff's motion for leave to file her supplement (ECF No. 36) to defendant's motion for summary judgment.  (ECF No. 37).  Defendant filed a response (ECF No. 38), to which plaintiff replied.  (ECF No. 39).

23    **I.**     **Background**

24
25
26
27
28

This is an insurance dispute case arising out of a car accident.  It was removed to federal court from Nevada state court based on diversity jurisdiction.  (ECF No. 1).  Plaintiff's amended complaint alleges three causes of action: (1) breach of contract, (2) unfair claims practices in violation of NRS 686A.310, and (3) breach of the covenant of good faith and fair dealing.  (*Id.* at

18-22).

The following facts are undisputed.  On December 12, 2019, plaintiff was traveling eastbound on interstate 215 when a second vehicle (the "unknown vehicle") changed lanes in front of her vehicle.  (*Id.* at 18).  Plaintiff applied her brakes and steered away to avoid a collision with the unknown vehicle, striking the center median.  (*Id.*).  Plaintiff's car repair estimate did not reflect any necessary repairs to the front of her vehicle.  (*Id.*).

The unknown vehicle did not stop at any point and remains unidentified.  (*Id.*).  Nevada Highway Patrol interviewed plaintiff and filed a traffic crash report.  (ECF No. 31, at 4).  The report does not state that plaintiff's vehicle hit or made any physical contact with the unknown vehicle.  (*Id.*).  Plaintiff's voluntary statement does not mention any physical contact with the unknown vehicle.  (*Id.*).  Another driver, directly behind plaintiff, captured the subject incident on a dashcam.  (*Id.*).

At the time of the subject incident, plaintiff was insured under an auto policy sold by defendant.  (*Id.* at 8).  The policy included $250,000/$500,000 in uninsured motor ("UM") vehicle coverage.  (*Id.* at 6).

The policy provides that defendant will pay for compensatory damages for a bodily injury from the owner or driver of an uninsured motor vehicle.  (*Id.* at 11).  The bodily injury must be sustained by the injured and "caused by an accident that involves the operation, maintenance, or use of an uninsured motor vehicle."  (*Id.*).

The policy defines an uninsured motor vehicle in three ways.  (*Id.* at 7).  Subsection (2) states that an uninsured motor vehicle is a land motor vehicle: [where] "the owner and driver of which remains unknown strikes [either] the insured, or the vehicle the insured is occupying, and causes bodily injury to the insured…"  (*Id.*).

On April 8, 2021, plaintiff notified defendant that she was requesting UM benefits.  (*Id.*).  Defendant notified plaintiff's counsel that it would deny her requested benefits, explaining that there was no contact between plaintiff's vehicle and the unknown vehicle.  (*Id.* at 8).

The factual issue in dispute is whether plaintiff made contact with the unknown vehicle.  Plaintiff never argues that she made physical contact with the unknown vehicle.  In fact, she admits that "the video 'does not capture any contact' and that 'no contact can be seen.'"  (ECF No. 34, at 5).  Plaintiff also contends that she "makes no concession that contact did not occur."  (*Id.* at n.1).

For the reasons discussed below, the court grants defendant's motion for summary judgment and denies plaintiff's motion for partial summary judgment as moot.

## II.   Defendant's motion for summary judgment

### 1.  Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits (if any), show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Information may be considered at the summary judgment stage if it would be admissible at trial.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.  Rather, it draws all inferences in the light most favorable to the nonmoving party.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987).

- 3 -

When the non-moving party bears the burden of proof at trial, the moving party can meet its burden on summary judgment in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

However, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324. If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

2. <u>Discussion</u>

The court has sufficient information to decide the instant motions based on the filings and

- 4 -

1    thus denies any request for oral argument.  LR 78-1.

2        As an initial matter, the court will address plaintiff's motion for leave to supplement her

3    opposition to defendant's motion for summary judgment.  (ECF No. 37).  Local Rule 7-2(g) states

4    that "[a] party may not file supplemental pleadings, briefs, authorities, or evidence without leave

5    of court granted for good cause."  LR 7-2.  Good cause exists "if the moving party is reasonably

6    diligent in seeking leave to supplement and the proposed briefing will make a substantive

7    difference to what is pending before the court."  *McAteer v. Sunflower Bank*, 2024 WL 1054441,

8    at *1 (D. Nev. Mar. 11, 2024).

9

10       The court finds that the supplement will not make a substantive difference to the relevant

11   motion.  Plaintiff's supplement provides Dan Jacquot's deposition testimony.  (ECF No. 36).

12   Jacquot is defendant's claim specialist who denied plaintiff's request for UM coverage.  (*Id*.).

13

14       Plaintiff contends that Jacquot never viewed the dashcam footage, creating a genuine issue

15   of material fact as it relates to her alleged contact with the unknown vehicle.  (*Id*.).  Jacquot

16   reviewed multiple documents in concluding that there was no contact with the unknown vehicle.

17   (ECF No. 38, at 8).

18

19       As discussed below, even if a reasonable jury considered Jacquot's deposition testimony,

20   they cannot conclude that defendant acted in bad faith and had no reasonable basis for denying the

21   claim.  Thus, the court denies plaintiff's motion for leave to file her supplement.  (ECF No. 37).

22

23       A.  Breach of contract

24       Plaintiff's first cause of action alleges that defendant failed to make full payment to her as

25   required by the policy.  (ECF No. 1, at 19).  Defendant argues that it did not breach the policy

26   agreement because plaintiff did not make physical contact with the unknown vehicle.  (ECF No.

27   31, at 10).

28

Nevada treats insurance policies like other contracts, and thus, legal principles applicable to contracts are generally applicable to insurance policies. *Century Sur. Co. v. Andrew*, 134 Nev. 819, 432 P.3d 180, 183 (2018) (citations omitted).   Nevada law requires a breach of contract claimant show (1) the existence of a valid contract, (2) performance by the plaintiff, (3) a breach by the defendant, and (4) damages resulting from the breach. *Walker v. State Farm Mutual Automobile Insurance Company*, 259 F.Supp.3d 1139, 1145 (D. Nev. 2017).

"Whether a party has breached a contract and whether the breach is material are questions of fact." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 536 (9th Cir. 2011) (citing *Hoffman v. Eighth Judicial Dist. Court*, 90 Nev. 267, 523 P.2d 848, 850 (1974).

First, the court will determine whether the policy requires an uninsured motor vehicle to make physical contact with plaintiff's vehicle for her to receive UM coverage.   To receive UM coverage under the policy, "the [uninsured motor vehicle] which remains unknown, [must strike] the insured or the vehicle the insured is occupying […] or an underinsured motor vehicle."   (ECF No. 31, at 7).

Defendant argues that strike is unambiguous and is interpreted to mean physical contact. (*Id*. at 10).   Plaintiff contends that strike is ambiguous, stating that "*Merriam-Webster Dictionary* provides no fewer than 71 meanings for the word, where a majority do not constitute the ordinary meaning."   (ECF No. 34, at 8-10).   Thus, she argues that strike is subject to more than one reasonable interpretation and the language must be construed most strongly against defendant.   (*Id*. at 11).

In Nevada, "[t]he starting point for the interpretation of any contract, including insurance policies, is with its plain language." *WP6 Rest. Mgmt. Grp. LLC v. Zurich Am. Ins. Co.*, No. 2:20-cv-1506-KJD-NJK, 2022 WL 980248, at *7 (D. Nev. Mar. 31, 2022).

- 6 -

An insurance policy "is enforced according to its terms to effectuate the parties' intent," viewing its provisions "in their plain, ordinary[,] and popular sense." *Levy Ad Grp., Inc. v. Chubb Corp.*, 519 F. Supp. 3d 832, 836 (D. Nev. 2021), *aff'd sub nom. Levy Ad Grp., Inc. v. Fed. Ins. Co.*, No. 21-15413, 2022 WL 816927, at *1 (9th Cir. Mar. 17, 2022) (citing *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303 (1993)).

"To determine whether a term is ambiguous, it should not be viewed standing alone, but rather in conjunction with the policy as a whole 'in order to give a reasonable and harmonious meaning and effect to all its provisions.'" *Fourth St. Place v. Travelers Indem. Co.*, 270 P.3d 1235, 1239 (Nev. 2011). Ultimately, the interpretation of an insurance policy is a question of law for the court. *Levy,* 519 F. Supp. 3d at 836.

The court finds that the policy's language is unambiguous. The common and ordinary meaning of strike implies physical contact. A reasonable person would understand strike to mean that there must be physical contact between the two vehicles.

Plaintiff asserts that it is reasonable for a policyholder to infer that defendant intended numerous other definitions for the word strike such as: "engage in battle, to make an impression, to thrust oneself forward, to strike at, to drive or remove by or as if by a blow, to attack or seize with a sharp blow, to inflict, [and so on]." (ECF No. 34, at 10). The court, drawing all inferences in light most favorable to plaintiff, finds that the only reasonable interpretation of the word strike is physical contact.

The court next turns to whether a reasonable jury could conclude that the unknown vehicle struck plaintiff's vehicle. Defendant argues that plaintiff bears the burden to establish physical contact and has not presented any evidence that such contact occurred. (ECF No. 31, at 17-18). Defendant offers multiple pieces of evidence to support its contention:

- Nevada Highway Patrol's report does not state that plaintiff's vehicle hit or made any physical contact with the unknown vehicle, and plaintiff's voluntary statement does not mention any physical contact with the unknown vehicle. (*Id.* at 20).

- An eyewitness to the accident did not mention that any physical contact between the two vehicles occurred. (*Id.*).

- Plaintiff's car repair estimate did not reflect any necessary repairs to the front of her vehicle. (*Id.* at 4).

- Another driver, directly behind plaintiff, captured the subject incident on a dashcam. (*Id.*). Defendant contends that no physical contact between the vehicles can be seen. (*Id.* at 5). Plaintiff explicitly states that "the video 'does not capture any contact' and that 'no contact can be seen.'" (ECF No. 34, at 5). Plaintiff adds that she made and makes no concession that contact did not occur. (*Id.* at n.1).

- Photographs of plaintiff's vehicle after the incident do not reflect any front-end damage. (ECF No. 31, at 20).

- Plaintiff's deposition testimony states that she was "not sure" if she struck the unknown vehicle. (*Id.* at 18). When asked if she felt an impact, plaintiff responded saying "I can't say for certain that I did." (*Id.*).

- Dr. John Baker, plaintiff's expert witness, was deposed and asked whether the vehicles struck each other. (*Id.* at 19). Dr. Baker responded and said, "there's no contact." (*Id.*).

Considering all the evidence submitted by the parties, the court finds that a reasonable jury could not conclude that plaintiff's vehicle and the unknown vehicle made any physical contact.

Defendant has satisfied its initial burden by demonstrating that plaintiff has failed to make a showing sufficient to establish essential elements of her claims. *See Celotex Corp.*, 477 U.S. at

323–24.  Plaintiff cannot rely on conclusory allegations that are unsupported by factual data, and she has failed to set forth specific facts—through competent evidence—showing a genuine issue for trial.  *See List*, 880 F.2d at 1045; s*ee Celotex*, 477 U.S. at 324.

Not once does plaintiff contend that she made physical contact with the unknown vehicle.  (*See generally* ECF No. 34).  In fact, plaintiff admits that the dashcam footage "does not capture any contact," and that she does not know whether contact even occurred.  (*Id*. at 5-6).  Further, plaintiff's statement that she "made (and makes) no concession that contact did not occur," is insufficient to defeat summary judgment.

Therefore, because a reasonable jury could not conclude that plaintiff's vehicle made physical contact with the unknown vehicle, summary judgment is appropriate.

### B.  Unfair claims practices in violation of NRS 686A.310

Plaintiff's second cause of action alleges that defendant violated multiple provisions of NRS 686A.310.  (ECF No. 1, at 19-21).

The Nevada Unfair Claims Practices Act, NRS § 686A.310, addresses "the manner in which an insurer handles an insured's claim."  *Zurich Am. Ins. Co. v. Coeur Rochester*, *Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010) (internal quotation omitted).  The statute lists sixteen activities that constitute unfair practices.  NRS § 686A.310(1)(a)-(p).  When an insurance company engages in one of these prohibited activities, the insured may bring a private right of action against the insurer for violations of the statute.  *See Hart v. Prudential Prop. & Cas. Ins. Co.*, 848 F.Supp. 900, 903 (D. Nev. 1994).

Plaintiff contends that she has sufficiently stated a claim for two unfair claims practices.[1]

---

[1]  (1) "Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear;" (2) "compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts

(ECF No. 34, at 12).  Merely stating a claim for an alleged violation is insufficient to defeat summary judgment.  Moreover, even if plaintiff sufficiently alleged the violations, defendant did not owe plaintiff coverage for the subject incident because there was no breach of contract. Therefore, plaintiff's second cause of action fails as a matter of law.

### C.  Breach of the covenant of good faith and fair dealing

Plaintiff's third cause of action alleges that defendant "failed to deal fairly and in good faith with plaintiff by refusing, without proper cause, to compensate plaintiff for a loss covered by the policy."  (ECF No. 1, at 22).

"It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Nelson v. Heer*, 163 P.3d 420, 426–27 (Nev. 2007).  The purpose of the claim is to prevent a contracting party from "deliberately countervening [ing] the intention and spirit of the contract." *Morris v. Bank of America Nevada*, 886 P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted).

A violation of the covenant gives rise to a bad-faith tort claim.  *United States Fidelity v. Peterson,* 540 P.2d 1070, 1071 (1975).  Bad faith is defined as "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." *Am. Excess Ins. Co. v. MGM,* 102 Nev. 601, 605, 729 P.2d 1352, 1354-55 (1986).

Plaintiff argues that the dashcam footage would allow a reasonable jury to conclude that defendant acted in bad faith.  (ECF No. 34, at 14).  However, the court has already found that plaintiff cannot maintain her breach of contract claim where defendant properly denied the requested coverage.  Thus, summary judgment is appropriate given that a reasonable jury would

---

ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered."  NRS § 686A.310(e-f).

be unable to conclude that defendant denied plaintiff's claim on an unreasonable basis.

**III.    Plaintiff's motion for partial summary judgment**

Having granted defendant's motion for summary judgment, the court denies plaintiff's motion for partial summary judgment as moot.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for summary judgment (ECF No. 31) be, and the same hereby, is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment or in the alternative, declaratory relief (ECF No. 22) be, and the same hereby, is DENIED as moot.

As no claims remain, the clerk of the court is INSTRUCTED to enter judgment in favor of defendant and close this case.

DATED September 9, 2024.

_____
UNITED STATES DISTRICT JUDGE